IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CT-3321-M

RANDLE PORTER COOKE, )
)
Plaintiff, )
)
v. ) **ORDER**
)
UNITED STATES OF AMERICA, )
)
Defendant. )

Randle Porter Cooke ("plaintiff") brings this action against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–80 [D.E. 1]. Plaintiff, who is confined to a wheelchair, alleges that Bureau of Prisons ("BOP") employees at the Federal Correctional Institution in Butner, North Carolina ("Butner") failed to properly secure him in an inmate transportation van, which caused him to fall and suffer a broken leg when the van made a sudden stop. Compl. [D.E. 1] ¶¶ 5, 11–18.

On January 26, 2021, the court dismissed any FTCA claim premised on a theory of medical malpractice. See [D.E. 24]. The United States moves to dismiss the remainder of the action pursuant to Federal Rule of Civil Procedure 12(b)(1) [D.E. 27], and has submitted a memorandum in support [D.E. 28], and the declaration of Joshua Chase, a Transportation Lieutenant employed at FCI-Butner [D.E. 29] ("Chase Decl."). Plaintiff responded in opposition to the motion to dismiss [D.E. 30], and the United States replied [D.E. 31]. As explained below, the court grants the United States's motion to dismiss.

I.

The court briefly recites the relevant facts; familiarity with the entire record is presumed.

Plaintiff is civilly committed to the custody of the Attorney General pursuant to 18 U.S.C. § 4248, and confined at Butner. Compl. ¶ 2. Plaintiff is "a paraplegic, confined to a wheelchair and catheterized 24/7[.]" Id. ¶ 5. Plaintiff alleges that, on November 28, 2018, while transporting him from Duke University Medical Center ("Duke") back to Butner, BOP officers Ragland and Ashmore improperly secured plaintiff and his wheelchair. Id. ¶¶ 9–17. Specifically, plaintiff contends that Ragland "shackled and handcuffed" plaintiff for the transportation, even though plaintiff "advised Ragland several times that he is a high level paraplegic with significant balance issues, and that he needs to have at least one hand free to hold on to something in case he should lose his balance." Id. ¶ 11. Plaintiff also attempted to discuss the issue with Ashmore, whose "response was that Ragland was driving and in charge." Id. ¶ 12.

> There was no seat belt in the back of the van where the plaintiff's wheelchair was to be secured. There was some sort of belt that reached from the ceiling on one side of the van and secured to the floor across on the other side of the van, but that belt did nothing to restrain the plaintiff in his wheelchair and this fact was pointed out to Officer Ragland before he locked the plaintiff alone in the back of the van. There was no seatbelt to secure [plaintiff] into his wheelchair, and the officers knew that.

Compl. ¶ 14. "At one point as they were getting [plaintiff] into the van, Ashmore remarked to Ragland, 'You know, we have never been trained to do this.'" Id. ¶ 15. Plaintiff made one final request "about leaving at least one hand free in case of an accident[,]" but "Ragland responded 'I just came out of the warehouse, so I am doing it the way I am supposed to. Don't worry about it.'" Id. ¶ 16.

Shortly after leaving Duke, the transport van made a sudden stop at a red light and plaintiff was thrown from his wheelchair onto the floor. Compl. ¶ 18. Plaintiff felt his right leg break and experienced severe pain. Id. ¶¶ 18, 20. The officers pulled over, lifted plaintiff off the floor, and re-set him in the wheelchair. Id. ¶¶ 19–20. Ashmore rode with plaintiff in the back of the van to

2

prevent further falls. Id. ¶¶ 23–24, 26.

> [T]here are no statutes, policies, or agency regulations that mandate the way in which BOP personnel must secure a handicapped individual in a van during transportation. When transporting any inmate, BOP officers must take into consideration a wide range of concerns, including, but not limited to: the safety of the officers, inmate, and the public at large. This includes ensuring inmates cannot escape or reach contraband during transport to injure themselves of the officers conducting the transport. These safety considerations do not change based upon the physical capabilities of the individual inmate during transport.

Chase Decl. ¶¶ 3–4.

II.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted); see Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 453 (4th Cir. 2012); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005). A federal court "must determine that it has subject-matter jurisdiction over the case before it can pass on the merits of that case." Constantine, 411 F.3d at 479–80. "[T]he party invoking federal jurisdiction bears the burden of establishing its existence." Steel Co., 523 U.S. at 104; see, e.g., Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). In considering a motion to dismiss for lack of subject-matter jurisdiction, the court may consider evidence outside the pleadings without converting the motion into one for summary judgment. See, e.g., Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

A.

Under the FTCA, the United States waives sovereign immunity for "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his

3

office or employment." 28 U.S.C. § 1346(b)(1); see Blanco Ayala v. United States, 982 F.3d 209, 214 (4th Cir. 2020); Kerns v. United States, 585 F.3d 187, 194 (4th Cir. 2009). A prisoner "can sue under the [FTCA] to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150, 150 (1963) (footnote omitted); see Millbrook v. United States, 569 U.S. 50, 52 (2013). A plaintiff must "show that an unequivocal waiver of sovereign immunity exists." Welch v. United States, 409 F.3d 646, 651 (4th Cir. 2005); see Anderson v. United States, 669 F.3d 161, 164 (4th Cir. 2011). "If the plaintiff fails to meet this burden, then the claim must be dismissed." Welch, 409 F.3d at 651; see Blanco Ayala, 982 F.3d at 214; Anderson, 669 F.3d at 164.

The United States argues that the discretionary function exception bars plaintiff's complaint and cites the discretionary function exception. Mem. Supp. Mot. Dismiss 1, 4–11. Under the FTCA's discretionary function exception, the United States is not liable under the FTCA for "[a]ny claim based upon . . . the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a); see Sanders v. United States, 937 F.3d 316, 327 (4th Cir. 2019). "The discretionary function exception 'marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals.'" Holbrook v. United States, 673 F.3d 341, 345 (4th Cir. 2012) (quoting United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984)); see Blanco Ayala, 982 F.3d at 214.

Analyzing whether to apply the discretionary function exception begins with a threshold identification of "the conduct at issue" which led to the alleged injury. S.R.P. ex rel. Abunabba v.

4

United States, 676 F.3d 329, 332 (3d Cir. 2012). The conduct at issue here is that of BOP employees placing a paraplegic inmate in a transportation van while fully shackled and without a seat belt or adequate means to secure his wheelchair.

The court then employs a two-part test to determine whether the discretionary function exception bars plaintiff's claim. See United States v. Gaubert, 499 U.S. 315, 322–23 (1991); Sanders, 937 F.3d at 328; Wood v. United States, 845 F.3d 123, 128 (4th Cir. 2017). First, the court must determine whether the conduct "involve[d] an element of judgment or choice." Gaubert, 499 U.S. at 322 (quotation and alteration omitted); see Berkovitz ex rel. Berkovitz v. United States, 486 U.S. 531, 536 (1988); Blanco Ayala, 982 F.3d at 214; Sanders, 937 F.3d at 328; Wood, 845 F.3d at 128; Holbrook, 673 F.3d at 345. "A government employee's conduct does not involve discretion where a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow and the employee has no rightful option but to adhere to the directive." Holbrook, 673 F.3d at 345 (quotations omitted); see Berkovitz, 486 U.S. at 536. "Where, however, a regulation authorizes or requires employee discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." Id. (quotation omitted); see Gaubert, 499 U.S. at 324. Second, if the alleged conduct involves discretion, the court must determine "whether that judgment is of the kind that the discretionary function exception was designed to shield." Gaubert, 499 U.S. at 322–23 (quotation omitted); see Berkovitz, 486 U.S. at 536; Sanders, 937 F.3d at 328; Wood, 845 F.3d at 128; Holbrook, 673 F.3d at 345. "Because the purpose of the exception is to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy . . . the exception protects only governmental actions and decisions based on considerations of public policy." Gaubert, 499 U.S. at 323 (quotations omitted); see Blanco Ayala, 982 F.3d at 214.

5

The United States argues that BOP employees have wide discretion in how or whether to secure inmates in transport vehicles because "there is no statute, regulation, or internal mandate that prescribes the manner in which an individual must be secured by seatbelt during transportation while in BOP custody."[1] Mem. Supp. Mot. Dismiss 7–8; see Chase Decl. ¶¶ 3–4. In response, plaintiff argues that "it stretches the limits of credulity that the BOP has absolutely no policies in place regarding the safe transport of prisoners for medical visits, especially handicapped prisoners." Resp. Opp'n Mot. Dismiss 6. Plaintiff points to Ragland's statement "that there was a way that prisoners are 'supposed to' be transported[,]" together with Ashmore's statement that he had not been "'trained to do this'" as "implying a policy that there was an appropriate way to transport prisoners, especially ones with a significant disability like paraplegia." Id. 5.

Numerous courts have held that "[t]he conduct at issue in this lawsuit—determining how to load prisoners into a van to transport them back to prison—is exactly the kind of discretionary function that the exception was designed to shield." Menolascina v. United States, No. 12 C 90, 2013 WL 707920, at *2 (N.D. Ill. Feb. 26, 2013); see, e.g., Vinzant v. United States, 458 F. App'x 329, 333 (5th Cir. 2012) (per curiam); Roble v. United States Gov't, No. CV PX-16-4045, 2018 WL 1014928, at *5 (D. Md. Feb. 22, 2018); Ward v. United States, No. 5:15-CT-3129-FL, 2017 WL 829241, at *1–4 (E.D.N.C. Mar. 2, 2017) (correctional officers' decision to transport plaintiff to an outside medical appointment "without the usage of his wheelchair . . . . satisfies both prongs of the discretionary function exception" (internal quotations and alterations omitted)); Crane v. United

---

[1] The United States acknowledges that "the officers followed applicable BOP policy when they refused Plaintiff's requests to leave his hands unrestrained." Mem. Supp. Mot. Dismiss at 10 n.4 (citing BOP Program Statement 5538.07, *available at* https://www.bop.gov/policy/progstat/5538_07.pdf (last visited May 17, 2021)). Plaintiff argues that this program statement "does not apply to the plaintiff under the facts and circumstances of this case . . . conflicts with other provisions in the same Program Statement." Resp. Opp'n Mot. Dismiss at 6 n.1.

6

States, No. 3:10-68-AC, 2011 WL 7277317, at *7 (D. Or. Nov. 29, 2011), report and recommendation adopted, 2012 WL 442748 (D. Or. Feb. 9, 2012).

Second, if the alleged conduct involves discretionary judgment, the court must determine whether the exercise of judgment is "based on considerations of public policy." Berkovitz, 486 U.S. at 537; see Gaubert, 499 U.S. at 323; Holbrook, 673 F.3d at 345. "Courts have routinely held that decisions about how to transport prisoners in vehicles involve policy-related judgments." Hooker v. United States, No. 17-CV-345-JNL, 2019 WL 4784593, at *6 (D. Me. Sept. 30, 2019) (partially paralyzed detainee was transported in a van that was not wheelchair accessible); see, e.g., Vinzant, 458 F. App'x at 333; Roble, 2018 WL 1014928, at *5; Ward, 2017 WL 829241, at *4 (E.D.N.C. Mar. 2, 2017); Menolascina, 2013 WL 707920, at *4; Crane, 2011 WL 7277317, at *8. The alleged comments the officers made concerning training and how they were "supposed" to transport plaintiff do not alter this conclusion: "[t]he analysis of whether the discretionary function exception applies does not depend on whether the government employee had subjective knowledge of his discretion or subjectively intended to exercise it[.]" Wood v. United States, 845 F.3d 123, 128 (4th Cir. 2017) (citing Gaubert, 499 U.S. at 325); see Blanco Ayala, 982 F.3d at 214–15; Seaside Farm, Inc. v. United States, 842 F.3d 853, 858 (4th Cir. 2016). Thus, the court concludes that the discretionary function exception bars plaintiff's claim.

B.

Plaintiff argues that "the jurisdictional facts are intertwined with the facts central to the merits of the dispute[]" and seeks discovery "on these factual issues." Resp. Opp'n Mot. Dismiss at 4. "District courts exercise broad discretion over discovery issues. A party is not entitled to discovery that would be futile or otherwise inadequate to establish a sufficient basis for jurisdiction." Seaside Farm, Inc., 842 F.3d at 860 (citations omitted). Plaintiff's speculation "that there may be

7

a government policy governing" transportation of paraplegic individuals in the custody of the Bureau of Prisons, wholly devoid of "well-pleaded facts or evidence to refute the government's assertion to the district court that no such policy exists[,]" fails to make the requisite showing that discovery is warranted. Davila v. United States, 713 F.3d 248, 264 (5th Cir. 2013); see Wood, 845 F.3d at 132; Seaside Farm, 842 F.3d at 858–59; cf. Blanco Ayala, 982 F.3d at 216–17.

III.

In sum, the court GRANTS the United States's motion to dismiss [D.E. 27], and DISMISSES the action for lack of subject-matter jurisdiction. The clerk shall close the case.

SO ORDERED. This 18th day of May 2021.

*Richard E. Myers II*
RICHARD E. MYERS II
Chief United States District Judge